IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

**PAMELA LYLES**
Harriet Tubman's Womens Shelter
1900 Massachusetts Ave., SE #9
Washington, DC 20003

Plaintiff:

**U.S. Marshal
M. HUGHES**
℅ US Marshal Service
500 Indiana Ave. NW
Washington, DC  20001

Defendant

**U.S. Marshal
TYLER**
℅ US Marshal Service
500 Indiana Ave. NW
Washington, DC  20001

Defendant

**U.S. Marshal
HUNT**
c/o US Marshal Service
500 Indiana Ave. NW
Washington, DC  20001

Defendant

**U.S. Marshal
SHANKS**
℅ US Marshal Service
500 Indiana Ave. N.W.
Washington, DC  20001

Defendant

**U.S. Marshal
ALFORD**
c/o U.S. Marshal Service
500 Indiana Ave. SE
Washington, DC 20001

**COMPLAINT**

**FILED**

JUN 10 2013

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Case: 1:13-cv-00862
Assigned To : Leon, Richard J.
Assign. Date : 6/10/2013
Description: Pro Se Gen. Civl

*JURY ACTION*

**RECEIVED**

APR 24 2013

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

|  |  |
|---|---|
| **D.A HUBBARD** <br> 5311 7th Street, N.W. <br> Washington, DC 20011 <br><br> Defendant <br><br> **PARK AINGER APARTMENTS, LLC** <br> c/o D A Hubbard <br> 7th Street, N.W. <br> Washington, DC 20011 <br> Defendant <br><br> **HUBBARD ENTERPRISES, Inc.** <br> 32 Florida Ave. N.E. <br> Washington, DC 20002 <br><br> Defendant <br><br> **MS. HUNT** <br> ℅ Park Ainger Apartments, LLC <br> 5311 7th St. NW <br> Washington, DC 200011 <br> Defendant | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

## COMPLAINT

Pamela Lyles, the *Pro se* plaintiff herein brings this action against the above named defendants for the reasons stated herein .

**PARTIES**

*Pro se* Plaintiff, Pamela Lyles, brings this against the defendants U.S. Marshals' Service, U.S. Marshal D. Alford, U.S. Marshal M. Hughes, U.S. Marshal Hunt, U.S. Marshal Tyler, U S. Marshal Shanks, and an unidentified U.S. Marshal whose name is unintelligible on the return of the writ of service, Park Ainger Apartments, Park Ainger Apartments, LLC, Hubbard Enterprises, Inc , and Ms.Hunt, manager of Park Ainger Apartments.

The defendants' positions at the U S. Marshal's Service and their acts and conduct can fairly represent the official policy of the U.S. Marshal's Service and their duties at the U.S. Marshal's Service and are answerable at law for the acts committed under color of federal, and state law and the laws of the District of Columbia. The acts of the defendant U.S. Marshals were committed either on the instruction of the U.S. Marshal's Service, or with the knowledge and consent of said Service.

The defendants D.A, Hubbard, Park Ainger Apartments, Park Ainger LLC and Hubbard Enterprise. Inc. Ms. Hunt. Mr Hubbard is a landlord who manages numerous apartment complexes in S.E. D.C. who is well known to the Marshals and Judges in the landlord tenant court having worked closely with them for decades. Ms. Hunt managed his apartments including Park Ainger Apartments the and their unlawful actions

## FACTS

1. In September, 2005, the plaintiff and her then Spouse leased an apartment from the defendants after Ms. Hunt showed the apartment and the laundry facility next door and encouraged them to lease the apartment located at 2435 Ainger Place SE, B-1, Washington, DC with full knowledge that both were disabled and receiving SSDI.

2. Once moving in, the plaintiff found that the apartment was infested with rats and and roaches and throngs of drug dealer and users utilized the plaintiff's apartment to transacted business every single night 20 feet from her bedroom The plaintiff feared for their their lives each night and on frequent occasions they notified the defendants and the police the defendants of to no avail. The plaintiff decided to stay because she did not have enough income to afford another apartment.

3. A few years after the plaintiff's residency the plaintiff, D.A. Hubbard and Ms. Hunt became embroiled in a dispute over their closing the laundry facility which was located in a buildi a few steps from the plaintiff's apartment when the plaintiff moved in but was shut down for years without explanation . The plaintiff objected because she was disabled and the closure caused her to travel by bus to a distant laundromat and to pay a significantly higher price than she had expected when she signed the lease.

4. However, the defendants refused to reopen of the laundry room and the plaintiff complained because she relied on their representation that the laundry room would be available to her when she signed the lease agreement.

5. In conversations with both Ms. Hunt and D.A. Hubbard, they frequently reminded the plaintiff that she was paying far less rent than any other tenant in the building having lived there longer than the later tenants and should make do without the laundry facility. The plaintiff

4.

threatened legal action for violations of the DC Housing.Authoring. Eventually D.A. Hubbard approached the plaintiff and asked her if he could pay her to move out so that he could increase the rent to the level that other tenants were paying.

6. The plaintiff declined because she and her new Spouse were on Social Security Disability Income and the paltry sum that he offered would not be enough to afford the first month's rent and deposit to lease another apartment. She instead insisted that they reopen the laundry facility as promised when she began leasing the premises.

7. Defendant D.A. Hubbard then stormed off, visibly upset and refused to reopen the ` laundry facility and vowed that he would force her to move.

8. When the plaintiff was late with one rental payment in October, 2011, D.A. Hubbard immediately filed a writ of restitution and both parties attended a hearing wherein D. A. Hubbard sought rental payments for several months but the Judge simply told the plaintiff to the rent incurred for October

10. Immediately after the hearing in November, 2011, the plaintiff telephoned Ms. Hunt who was responsible for the receipt of rental payments, and had the rental receipts records who told her to simply send the rental payments to her as the plaintiff over the paid over the past 8 years. The plaintiff complied by paying rent the rental payments each months from November, 2011 and March 2012

11. The plaintiff assumed that Ms, Hunt had posted the rental payments as she had for in the prior 8 years. She had no clue that D. A. Hubbard and Ms. Hunt engaged in were scheming to evict her without her knowledge by submitting false documents to the Landlord/Tenant Court claiming the she was delinquent in her rental payments and had in *ex parte* hearings without disclosing the facts to any judge.

12. On the early morning of April 20, 2012 two armed U,S. Marshals and D.A. Hubbard

5

entered her apartment and informed her that she was being evicted on the spot. The plaintiff immediately informed them that they were wrong because she was current with her rental payments and had not been served with any notice whatsoever that she was to be evicted.

13. The plaintiff then demanded to know from D.A. Hubbard what this was all about because he knew full well that her rent was current while he lied to the Marshals Hubbard refused to admit the truth or contact his employee Ms.Hunt who could verify the fact that the plaintiff was currant in her rental payments. The Marshals informed the plaintiff that D A. Hubbard had obtained a writ of eviction and that they were there to evict her on the spot.

14. The plaintiff told the Marshals that she had never received notice of a default judgment or a writ of eviction and explained that D.A. Hubbard was lying and deliberately failed to notify her so that he could regain possession of the apartment as he had stated he wanted to do. The plaintiff explained that she and D.A. Hubbard had been having other problems and that she was an attorney (whose numerous degrees and certificates were plainly hanging on the wall) who would never fail to respond to a notice of an eviction hearing.

15. The armed Marshals refused to accept the plaintiff's explanation and began moving toward the plaintiff in a threatening manner when the plaintiff demanded to see some documents as evidence that she had received notice of an eviction when one of Marshals responded., "we don't have to show you any records, we're going to evict you now, now get outside now."

16. In a desperate attempt to avoid the eviction the plaintiff told the Marshals she could pay any amount D.A.Hubbard required and take it to court whereupon the Marshals looked to D.A. Hubbard who shouted "NO!" evict her now.".

17. The Marshals then acted on D.A. Hubbard's edict and again move toward the plaintiff in an attempt to seize her when the plaintiff informed them that the law in the District of Columbia permit a tenant to stop an eviction at any time before the eviction begins by paying all

6.

of the monies due. The plaintiff explained to the Marshals that the law was known as the so called the "translux" monies which she could pay on the spot and work the matter out legally at another.

18. The plaintiff suggested that the Marshals contact their supervisor because they were violating the law and that D A. Hubbard was accomplishing his goal of forcing her out in violation of the D.C. Housing Code. The marshals refused to do so and began ordering her to get out. immediately. During the entire time defendant D.A. Hubbard stood quietly and smiled.

19. The plaintiff asked the Marshals to at least postpone the eviction so that she could get to the courthouse to nullify the default order but they refused.

20. The plaintiff then begged them to give her time to arrange for someone move her possessions out but again they refused.

21. The plaintiff then asked if she could at least change from her pajamas into street clothes which time the Marshals at which the marshals agreed but they followed her to her bedroom and watched as she changed her clothes.

22. The plaintiff pointed to her 150lb. safe and said that she had more than enough money to pay the alleged arrearages. The marshals refused to answer.

23. Immediately after changing clothes the plaintiff again attempted to reason withthem by telling them that the defendant D.A. Hubbard was lying about her nonpayment of rent but they refused to listen to her.

23. Then both marshals shouted that she was moving too slowly and then grabbed both arm 24. When the plaintiff tried to stand and go back into the apartment to get her purse, phone, and money the Marshals stopped her by her back from the door and handcuffed her arms behind her back.

25. Once again the plaintiff tried to stand up whereupon one of the Marshals knocked

7.

the ground unconscious

32. The neighbors called EMT's who rushed the plaintiff to Prince George's County Hospital with a diagnosis of *gran mal* seizure where she was hospitalized

33. Immediately upon returning the plaintiff from the hospital the plaintiff sought an immediate hearing before the motions Judge at D.. Superior Court.

34 The docket entries which the plaintiff knew about until the illegal eviction clearly shows that DA. Hubbard had embarked on a sinister plot to rid himself of the plaintiff and

he had the full cooperation of the U.S. Marshals' Service to carry out his ignominious scheme by attempting to evict the plaintiff.

35. The docket contains a plethora of instances of deceit beginning in December, 2011 when defendant deliberately failed to notify the plaintiff of scheduled for hearings and had *ex parte* hearings, fraudulently submitting documents alleging that he had served the plaintiff when he did not such notice of payments required for eviction.

36. A docket entry wherein the defendant cancelled his writ of restitution on March 26, 2012 yet he and U.S. Marshal Hughes attempted evict the plaintiff On March 10. 2012, one month prior to the April 20th eviction U.S Marshal Hughes attempted to evict the plaintiff but was not successful because wrote "no address on door." The fact that U.S. Marshal did not give the plaintiff notice at that time so that she could have spent packing is indicative of their intention to evict the plaintiff by surprise.

37. On the return of service signed by both U.S. Marshal Hughes and D.A. Hubbard Mr. Hughes wrote "85% complete" presumably referring the was the amount of plaintiff's personal possessions the U.S. Marshal Hughes moved outside.

38. The plaintiff filed case in Superior Court well as a motion seeking to vacate the default judgment.emergency hearings or the plaintiff's motion much less than an evidentiary hearing to

9.

39. Four different judges from the Superior Court refused to even consider the have the plaintiffs personal property returned as required by numerous D. C. Appellate Court decisions whenever a plaintiff alleges that they were not properly notified. Judge Rankin, who issued the default judgment, refused to even consider the plaintiffs, motion to set aside her motion by stating that the plaintiffs motion had no merit.

40. When the plaintiff finally searched the records and the landlord/tenant court clerk's office she was shocked that the defendant had been attempting to evict her for nearly 8 months without her knowledge.

41. The docket sheet revealed that the U.S. Marshal Hughes was instrumental defendants in his fraudulent scheme designed to illegally evict the plaintiff without the .statutory notice required by law in blatant violation of the District of Columbia Housing Authorities rent control statute which strictly prohibits the eviction of a tenant who is not delinquent with the rent merely to obtain a higher rental income on a unit

42. The docket sheet clearly proves that D.A. Hubbard committed fraud upon the court so that he could obtain default judgments in *ex parte* hearings from December 2011 to the day of the eviction on April 20, 20012 even though the plaintiff paid her rent to Ms. Hunt each and every month after November 2011 in the form of a postal money order.

43. On April 12, 2012 a mere 8 days prior to the eviction D.A. Hubbard engaged in another *ex parte* hearing of which did not notify the plaintiff wherein he obtained the writ of restitution which resulted in an order of eviction.

10.

## VIOLATIONS OF LAW

### VIOLATION OF 42 U.S.C.1983

The Docket in Landlord/Tenant Court file, case no.LBT027461 indicated, *inter alia,* that U.S. Marshals M. Hughes and D.A. Hubbard that unreasonably violated the plaintiff's clearly established Constitutional rights by viciously handcuffing her arms, shackling her legs, kicking her in the head and seizing her person in furtherance of an illegal eviction without justification. Their actions did not further any governmental interest such as protecting an officer or the public which would outweigh the serious harm.

The matter was a civil matter and the severity of the Marshals' attack was unreasonable and inappropriate under the circumstances of the case because the plaintiff posed no threat to the Marshals safety since plaintiff was not resisting or evading arrest.plaintiff had a right to be free from illegal seizures of her person and property and a right to be free of detention and false imprisonment, the rights secured to the plaintiff by the Fourth, Fifth and Fourteenth Amendments to the Constitution of the U.S. and by 42 U.S.C. Section 1983 as well as her Fifth Amendment right to substantive due process. Additionally, the U S.Marshals' active intervention and intimidation constituted state action which creating the appearance that Marshals sanctioned the illegal eviction, on behalf on D.A.Hubbard over the objection of the plaintiff thereby creating an appearance that the Marshals sanctioned the illegal eviction by providing such significant encouragement overtly and covertly that it must be deemed to be that of the state (or in this case the city) itself.

### EXCESSIVE FORCE

The defendants intentionally violated the plaintiff's Fourth Amendment rights because their use of force was in handcuffing her was not objectively reasonable.

In the course of a civil eviction a reasonable Marshal would have known that the degree of

11..

force used lawful means of carrying out an eviction especially where there were no aggravating factors justifying a greater degree of force.

The plaintiff, a 62 year old disabled female posed no threat to the Marshals or actively resisted arrest or attempted to flee. The Marshals' conduct was objectively unreasonable and intimidated the plaintiff so much that it caused her her to refrain from from exercising her legal right to resist an illegal eviction under color of state law.

## VIOLATION OF THE FOURTH AMENDMENT

### Seizure of the Plaintiff

The Marshals violated the Fourth Amendment of the Constitution by unlawfully seizing the plaintiff when they grabbed her and forced her under their control and application of force while taking liberties to grab, push, handcuff, shackle and kick her in the head under their show of authority and application of force. The plaintiff was seized by the Marshals when they utilized physical force and a show of authority by terminating and restraining her freedom of movement through means intentionally applied in violation of the Fourth Amendment

### Arrest without probable cause

The Marshals effectively arrested the plaintiff without probable cause when they seized her person and forced her under their authority and control. by handcuffing her, shackling her legs, kicking her in the head and forced her to lie on the bare floor while they waited for defendant D.A. Hubbard to change the locks on the door.

### Seizure of the plaintiff's property

The Fourth Amendment protects the plaintiff's right to her personal property without interference from law enforcement officers absent consent or reasonable suspicion that a crime has been committed. The plaintiff's property was seized when the Marshals interfered with the

12.

plaintiff's possessory interest in her property and the seizure was exacerbated when they failed to remove most of her property inside the apartment when they fled leaving her private property in the hands of the landlord, D.A. Hubbard. The defendants violated the plaintiff's Fourth Amendment rights because the seizure of the plaintiff's property was objectively unreasonable.

## VIOLATION OF THE FIFTH AMENDMENT

The plaintiff's Fifth Amendment right was violated because she was illegally evicted as a result of D A. Hubbard's fraudulent scheme wherein he embarked on a quest to rid himself of the plaintiff as a tenant, solely out of greed. Marshal Hughes attempted to carry the landlord's plan on March 19, 2012 and again on April 20, 2012. The U.S. Marshals had a duty to ascertain that the plaintiff was notified of the eviction and more importantly, the Marshal had no right to refuse to accept payment on the spot when the plaintiff offered to do so, rather than disregard the law which requires him to do so.

## CONSPIRACY TO DEPRIVE PLAINTIFF'S CONSTITUTIONAL RIGHTS

The defendants the U.S. Marshal Service in their official capacities D.A. Hubbard, Park Ainger Apartments, LLC, Hubbard Enterprises, Inc, and Ms. Hunt have all jointly and severally conspired in concert with each other under pretense, color, Constitutional and statutory rights. The federal defendants knew or should have known that the civilian defendants were acting in violation of the District of Columbia Rental Housing Act, D.C. Code Section 42-3505.01 because they could produce no proof that the plaintiff had been served with notice of the eviction as required by law as she desperately attempted to explain and without such proof there were no exigent circumstances requiring that the eviction carried out prior to conducting reasonable research to determine whether

apartment t and moved just enough to permit D.A. Hubbard to have the locks on the doors changed They then fled the area and even signed a documents attesting to the fact that they did not remove all of the property

## CIVIL CONSPIRACY

The docket reveals I that U.S. Marshal Hughes and defendant Hubbard joined forces to evict the plaintiff on March 6, 2012 without warning to the plaintiff even though Hubbard had cancelled the writ of restitution 10 days earlier. Thus, they admittedly attempt with no lawful order to evict. Each of the defendants jointly and severally as well as the Marshals in attendance but failed to report the violations to a superior and acquiesced followed a single a general conspiratorial objective to injure the plaintiff by an unlawful and illegal eviction.

Express agreement by each defendant is not necessary nor knowledge of the details of the plan. An overt an act was committed in furtherance of the conspiracy that caused injury to the plaintiff by converting her personal property for the use and control of D.A. Hubbard, seizing her person and subjecting her brutal physical force by armed Marshals.

## NEGLIGENCE

Marshals Hughes, Alford, Hunt, Tyler, and Shanks were all present during the illegal .eviction and assault on the plaintiff yet none of them reported the wrongdoing committed by their fellow marshals. The circumstances surrounding the application of excessive force also involved negligence which is the independent violation of the standard of care which the defendants owed to the plaintiff which far exceeded the standard of care of a reasonably prudent officer. Those Marshal who signed the returned writ of restitution had a duty to inform their supervisors of the wrongful and illegal conduct of Marshal Hughes and his partner and are equally responsible for their conduct.

## DERELICTION OF DUTY

At the time of the eviction the law governing eviction in the District of Columbia provided that a tenant under threat of eviction could pay all of the fees and costs to stop the eviction at any moment before the actual eviction begins. In this case the plaintiff pleaded with the Marshals to allow her to pay the costs (the "trans lux" costs) to stop the eviction on the spot. The Marshals looked to D.A. Hubbard who shouted "no!" and decided to continue with the eviction. A reasonably competent public official should know the law governing his conduct and there is no excuse for the Marshals to proceed with an eviction under such circumstances. Indeed, their conduct reinforces the fact that the Marshals were beholden to their friend D A. Hubbard who was hell bent on uprooting the plaintiff. The Marshals also disregarded the plaintiff's assertion that D.A. Hubbard was merely attempting to escape the provisions of the D.C.. Housing Code which mandates that any eviction other than for nonpayment of rent must be cleared by the D.C. Rent Administrator. They refused to believe that D.A. Hubbard was capable of fraudulently obtaining a writ of eviction to force a tenant to move probably since they have known for decade. The state of the law in the District of Columbia is such that numerous instances of landlords' attempt to circumvent the law exist and the state of the law should have given the Marshals fair warning that they should carefully consider D.A. Hubbard's allegations and the fact that D.A. Hubbard could not produce a shred of evidence showing that he gave the plaintiff notice of the eviction should have given the Marshals reason to at least postpone the matter until they had further information. D.A Hubbard's allegations without proof should have been no more credible nor carried more weight than the plaintiff's and the Marshals' choice of his words over there plaintiff' competing claim displayed favoritism and was unreasonable

Additionally, the Marshals were required by law to remove all of the personal property from the dwelling The Marshals in this case left most of the plaintiff's personal property inside the

17

legal counsel to demand the return of her property they have not even return her calls. To date, the defendants have refused and continue to refuse to return any item of the plaintiff's property and have refused to inform of the whereabouts or disposition of it having unlawfully and wrongfully converted her property to their own use.

As a result of the defendants' above-described acts, the plaintiff and her Spouse have been deprived of the use and enjoyment of her household of personal possessions and have had to expend thousands of dollars to feed, clothe and shelter themselves for nearly a year. As a further result the plaintiff and her spouse has suffered humiliation, distress and embarrassment and have been held up to public scorn and ridicule.

The taking of the plaintiff's property was done willfully and maliciously, with a reckless disregard for the plaintiff's rights and with a punitive animus. After demand was made on the defendants to return the property or reimburse plaintiff for its value the defendants willfully and maliciously refused to return it to plaintiff. For such willful and malicious acts on the part of the defendants the plaintiff seeks punitive damages in addition to actual damages.

### CONSPIRACY TO EFFECT CONVERSION

On April 20, 2012, the U.S. Marshals willfully, knowingly and recklessly abetted the civilian defendants' conversion of plaintiff's property by failing to remove the bulk of the plaintiff's personal property from the premises choosing to flee immediately after D.A. Hubbard had a locksmith change the locks on the door. The U.S. Marshals did not give the plaintiff the benefit of doubt by at least postponing the eviction until the plaintiff could arrange to move her property or until they had more information. Thus, the Marshals were in constructive possession of the property of illegally seized property and are liable for the full amount of damages.

16.

## BATTERY

The U.S. Marshals are liable for the tort of battery because of their intentional unwanted acts that caused harmful and offensive bodily contact with the plaintiff. which were reasonably unnecessary. The excessive force was the product of a battery which escalated in an unbroken manner into excessive force and the Marshals are liable for the full range of consequences including the direct causation of a gran mal seizure suffered by the plaintiff on spot causing immediate hospitalization and the tremendous emotional damages suffered by the plaintiff to this day.

## ASSAULT

The Marshals are liable for the assault on the plaintiff because of their intentional unlawful acts including handcuffing, of her legs, forced to the bare floor face down and the deliberate kick to the head which harmed the plaintiff. Defendant U.S. Marshal Service had a duty to adequately train and supervise its employees to avoid situations leading to physical altercations during an eviction especially when they did not inform the resident of the impending eviction. The usual practice is for the U.S. Marshals' to notify tenants in advance of a scheduled eviction so that the tenn can prepare and move their property themselves.

## NEGLIGENCE

Defendants Hubbard, Park Ainger Apartments, Hubbard Enterprises, Inc and Hunt owed the plaintiff a duty to be truthful and refrain from committing perjury by making false statements to the landlord/tenant court judge alleging that the plaintiff was delinquent with her rent when she was not thereby obtaining a bogus default judgment. Their actions constituted gross negligence and willful and wanton misconduct which caused the plaintiff to suffer financial loss of

20

## BATTERY

The U.S. Marshals are liable for the tort of battery because of their intentional unwanted acts that caused harmful and offensive bodily contact with the plaintiff. which were reasonably unnecessary. The excessive force was the product of a battery which escalated in an unbroken manner into excessive force and the Marshals are liable for the full range of consequences including the direct causation of a gran mal seizure suffered by the plaintiff on spot causing immediate hospitalization and the tremendous emotional damages suffered by the plaintiff to this day.

## ASSAULT

The Marshals are liable for the assault on the plaintiff because of their intentional unlawful acts including handcuffing, of her legs, forced to the bare floor face down and the deliberate kick to the head which harmed the plaintiff. Defendant U.S. Marshal Service had a duty to adequately train and supervise its employees to avoid situations leading to physical altercations during an eviction especially when they did not inform the resident of the impending eviction. The usual practice is for the U.S. Marshals' to notify tenants in advance of a scheduled eviction so that the tenn can prepare and move their property themselves

## NEGLIGENCE

Defendants Hubbard, Park Ainger Apartments, Hubbard Enterprises, Inc and Hunt owed the plaintiff a duty to be truthful and refrain from committing perjury by making false statements to the landlord/tenant court judge alleging that the plaintiff was delinquent with her rent when she was not thereby obtaining a bogus default judgment. Their actions constituted gross negligence and willful and wanton misconduct which caused the plaintiff to suffer financial loss of

20

## PRAYER FOR RELIEF

The plaintiff seeks the following relief for the defendants' wrongful conduct: Compensatory damages $1.5000.00 (one million and five hundred dollars) Punitive damages in the amount of $ 50,000,000.00 (fifty million dollars) the return of every item of personal property or the replacement value.;

_____

April22, 20013

Pamela Lyles, *Pro se* Plaintiff
c/o Harriet Tubman Womens
1900 Massachusetts Ave.SE #9
Shelter Washington, DC  20003

The Plaintiff requests a jury trial.

22.