UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| PAMELA LYLES, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 13-0862 (RJL) |
| M. HUGHES, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION**

(March 19, 2015) [Dkt. #15]

FILED
MAR 1 9 2015
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

This matter is before the Court on Defendants' Motion to Dismiss [Dkt. #15]. For the reasons discussed below, the motion will be GRANTED.

**BACKGROUND**

This action arises from plaintiff's eviction from her former residence in the Park Ainger Apartments in Southeast Washington, DC. It appears that plaintiff's former landlord initiated proceedings in the Superior Court of the District of Columbia, Civil Division, Landlord and Tenant Branch, in 2011. *See* Amended Complaint ("Am. Compl.") ¶ 6 [Dkt. #9]. Plaintiff states that her former landlord falsely represented to the court that she "was delinquent in her rental payments," Am. Compl. ¶ 6, in order to force her to vacate the premises and make way for a new tenant that could be charged higher rent, *see id.* ¶ 7.

1

The landlord took steps to evict plaintiff on three occasions. A first attempt on March 19, 2012 was cancelled apparently because there was no address on the door of plaintiff's apartment. *See* Pl.'s Resp. to Defs.' Mot. for Summ. J. ("Pl.'s Opp'n") Ex. A (Writ of Restitution dated March 19, 2012) [Dkt. #17]. A second attempt occurred "on or about March 26, 2012, [when] Defendant U.S. Marshal Hughes and the landlord jointly attempted to illegally evict" plaintiff, "even though they both knew or should have known that there was not [W]rit of Possession or eviction order in effect at that time." *See* Am. Compl. ¶ 8. However, "the landlord received a new eviction order of possession on April 13, 2012." Am. Compl. ¶ 9.

"In the early morning of April 20, 2012, two armed U.S. Marshals and the landlord entered the Plaintiff's apartment and informed her that she was being evicted on the spot." Am. Compl. ¶ 10. Plaintiff claimed "that she had never received notice of a default judgment and informed [the Marshals] that . . . she was an attorney . . . who would never fail to respond to a notice of an eviction hearing." Am. Compl. ¶ 12. Nevertheless, defendants allegedly "move[d] toward the plaintiff in a threatening manner when the [p]laintiff demanded to see . . . evidence that she had received notice of an eviction." Am. Compl. ¶ 13. They refused plaintiff's offer to pay the amount the landlord claimed was due, Am. Compl. ¶ 16, refused her request "to . . . postpone the eviction so that she could get to the courthouse to nullify the default order," *id.* ¶ 18, and refused her request for "time to arrange for someone [to] move her possessions out," *id.* ¶ 19. Further, because plaintiff "was moving too slowly," Am. Compl. ¶ 22, defendants allegedly "grabbed both [of plaintiff's] arms and dragged her through the apartment and

pushed her out of the door," *id.* ¶ 22. They allegedly "pushed [plaintiff] so hard that she landed on the floor [in front] of the door of the apartment across the hallway." Am. Compl. ¶ 22. When plaintiff attempted to "go back into [her] apartment to get her purse, phone, and money, [they] stopped her by handcuffing her arms behind her back," Am. Compl. ¶ 23, knocked her to the floor, forced her to lie face down on the floor, and shackled her feet, *id.* ¶ 24. "Plaintiff struggled while lying on the floor, . . . cried out in pain and screamed to the witnesses" who were observing the events, and was "kicked . . . on the right part of her forehead causing blood to flow" by one of the defendants after he "told her to shut up and . . . she did not." Am. Compl. ¶ 25.

According to plaintiff, "[t]he Marshals carried only a few items outside and fled as soon [as] the landlord had the locks changed," Am. Compl. ¶ 26, leaving "nearly all of [plaintiff's] possessions including the safe which they knew contained money and jewelry in the hands of the landlord who slammed the door shut and told the Plaintiff to get out," *id.* ¶ 27. According to plaintiff, she "was so distraught that she suffered a gran mal seizure on the spot and was rushed to the emergency room [of a hospital] by her neighbors and was subsequently hospitalized." Am. Compl. ¶ 28. She since has been unable to retrieve her personal belongings from her former landlord, who allegedly "has refused to release her property or even talk to her." Am. Compl. ¶ 31.

The United States Marshals Service ("USMS"), Michael Hughes, the United States Marshal for the District of Columbia Superior Court, and Jeremy Alford, a Deputy U.S. Marshal, effected her eviction on April 20, 2012. Am. Compl. ¶ 2; *see* Mem. of P. & A. in Supp. of Defs.' Mot. to Dismiss, ("Defs.' Mem."), Ex. A (Certification Pursuant

to 28 U.S.C. § 2679 by Daniel F. Van Horn, Chief of the Civil Division, Office of the United States Attorney for the District of Columbia) [Dkt. #15-2]. She brings this action under 42 U.S.C. § 1983 alleging violations of rights protected under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. *See generally* Am. Compl. In addition, plaintiff brings a host of tort claims, including claims for conversion, intentional infliction of emotional distress, false arrest, false imprisonment, abuse of process, negligence, civil conspiracy, assault, and battery. Am. Compl. at 8-14. She demands compensatory and punitive damages. Am. Compl. at 15.

## STANDARDS OF REVIEW

Defendants move to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Rule 12(b)(1) permits a party to assert by motion the defense of lack of subject matter jurisdiction, and Rule 12(b)(6) permits the defendant assert by motion a defense that plaintiff failed to state a claim upon which relief can be granted.

### I. Federal Rule of Civil Procedure 12(b)(1)

Federal courts are courts of limited jurisdiction. *See Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). The law presumes that "a cause lies outside [the Court's] limited jurisdiction" unless a plaintiff establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S 375, 377 (1994). When a defendant files a motion to dismiss a complaint for lack of subject matter jurisdiction, the plaintiff

bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the Court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged[.]'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). Nevertheless, "'the court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions.'" *Disner v. United States*, 888 F. Supp. 2d 83, 87 (D.D.C. 2012) (quoting *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006)). In making its determination, the Court is not limited to the allegations in the complaint and "may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. District of Columbia Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000) (citation omitted).

## II. Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). Although a plaintiff may survive a Rule 12(b)(6) motion even where "recovery is very remote and unlikely," the facts alleged in

the complaint "must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (internal quotation marks and citation omitted). If the facts as alleged, which must be taken as true, fail to establish that a plaintiff has stated a claim upon which relief can be granted, the Rule 12(b)(6) motion must be granted. *See, e.g., Am. Chemistry Council, Inc. v. U.S. Dep't of Health & Human Servs.*, 922 F. Supp. 2d 56, 61 (D.D.C. 2013).

## DISCUSSION

Defendants' arguments for dismissal of plaintiff's claims are premised on the USMS' status as a federal government entity and the remaining defendants' status as federal government officers or employees. *See generally* Defs.' Mem. at 4-6. The USMS is a bureau within the United States Department of Justice, *see* 28 U.S.C. § 561(a), and the United States Marshal for the Superior Court of the District of Columbia is appointed by the President of the United States and confirmed by the Senate, *id.* § 561(c). "Like all other U.S. Marshals, the Superior Court Marshal 'shall be an official of the [USMS] and . . . serve[s] under the direction of the Director,' [28 U.S.C. § 561(c)], who "supervise[s] and direct[s] the [USMS] in the performance of its duties[,]' 28 U.S.C. § 561(g)." *Johnson v. Gov't of the District of Columbia*, 734 F.3d 1194, 1199 (D.C. Cir. 2013).

With respect to defendants Hughes and Alford, defendants represent:

> District of Columbia Superior Court United States Marshal Michael Hughes and Deputy United States Marshal Jeremy Alford . . . were . . . acting within the scope of their employment as employees of the United States Marshal Service at the time of the allegations stated in the Amended

6

> Complaint; that is, in March 2012 and April 1012, when Plaintiff, Pamela Lyles, was evicted from her apartment pursuant to a valid Writ of Restitution issued by the Superior Court for the District of Columbia.

Defs.' Mem., Ex. A (Certification Pursuant to 28 U.S.C. § 2679). "Upon certification . . . that the defendant employee[s were] acting within the scope of [their] office or employment at the time of the incident out of which the claim arose, any civil action . . . commenced upon such claim in a United States district court shall be deemed an action against the United States . . . and the United States shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(1).

### I. Plaintiff's Tort Claims

Plaintiff alleges numerous tort claims in her Amended Complaint, including claims for conversion, intentional infliction of emotional distress, negligence, abuse of process, conspiracy, assault and battery, and false imprisonment. *See generally* Am. Compl. Defendants move to dismiss plaintiff's tort claims for lack of subject matter jurisdiction, arguing that these claims are not cognizable because plaintiff failed to exhaust the requisite administrative remedies. *See* Defs.' Mem. at 4-6.

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) (citations omitted); *see Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999) (same). The Federal Tort Claims Act ("FTCA") grants an express waiver of sovereign

7

immunity, allowing the United States to be held liable "in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674, for certain – but not all – tort claims, *see, e.g., Richards v. United States*, 369 U.S. 1, 6 (1962) ("The Tort Claims Act was designed primarily to remove the sovereign immunity of the United States from suits in tort and, with certain specific exceptions, to render the Government liable in tort as a private individual would be under like circumstances."). The FTCA has limits and does not waive immunity for constitutional torts that may have been committed by federal government officers or employees. *See Meyer*, 510 U.S. at 477-78 (1994) ("[T]he United States simply has not rendered itself liable . . . for constitutional tort claims."). Although plaintiff argues that it is improper to construe her tort claims as arising under the FTCA, because her "Complaint is based upon the denial of [her] Constitutional rights, 42 U.S.C.A. [§] 1983 and several torts" over which this Court has subject matter jurisdiction, plaintiff is mistaken. Pl.'s Opp'n at 12. Because the United States has not waived sovereign immunity for the brand of constitutional torts plaintiff alleges in her complaint, the FTCA is the sole avenue by which she may seek money damages from "the United States . . . for injury or loss of property or personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." *See* 28 U.S.C. § 1346(b)(1).

Even liberally construed under the FTCA, plaintiff's claims fail for the separate reason that she did not exhaust her administrative remedies before bringing her claims in federal court. In order to initiate an action against the United States for money damages,

8

including a claim under the FTCA, a plaintiff must first "present[] the claim to the appropriate Federal agency and [her] claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). A plaintiff's "[f]ailure to first present the claim to the proper agency constitutes a failure to exhaust administrative remedies and may result in dismissal of the claim for lack of subject matter jurisdiction." *Beard v. Seals*, 14 Civ. 1035 (RCL), 2014 WL 6783707, at *1 (D.D.C. Dec. 2, 2014); *see Abdurrahman v. Engstrom*, 168 F. App'x 445, 445 (D.C. Cir. 2005) (per curiam) (affirming the district court's dismissal of an unexhausted FTCA claim "for lack of subject matter jurisdiction").

Plaintiff does not allege that she presented an administrative claim to the appropriate agency, *see generally* Am. Compl., and the USMS has no record of having received a claim from her, *see* Defs.' Mem., Auerbach Decl. ¶¶ 4-5 [Dkt. #15-2]. Where, as here, plaintiff did not exhaust her administrative remedies before bringing this action, the FTCA bars her tort claims. *See* 28 U.S.C. § 2675(a); *McNeil v. United States*, 508 U.S. 106, 113 (1993) (affirming dismissal of plaintiff's FTCA claim for lack of subject matter jurisdiction because "[t]he FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies"). Defendants' motion to dismiss plaintiff's tort claims must therefore be GRANTED.

## II. Plaintiff's Civil Conspiracy Claim

Defendants next argue that the Amended Complaint fails to allege a civil conspiracy claim. *See* Defs.' Mem. at 6. Plaintiff responds by referring to "Paragraph 8 of the [Amended] Complaint," where she alleges that, on or about March 26, 2012,

9

Defendant U.S. Marshal Hughes and the landlord "jointly attempted to illegally evict the [p]laintiff even though they both knew or should have known that there was no writ of Possession or eviction order in effect at that time." *See* Pl.'s Opp'n at 11. In support of this contention, plaintiff also refers to a "docket," which presumably is a reference to the docket of the matter before the Superior Court's Landlord and Tenant Branch, as evidence that "there was no eviction order" in place at the time of her eviction. *See* Pl.'s Opp'n at 11. There appears a docket entry dated March 26, 2012 reflecting the cancellation of a Writ of Restitution on March 19, 2012. *See* Pl.'s Mot. Ex. (Docket Sheet) at 4. To plaintiff, this cancellation is proof not only that there was no eviction order in effect on March 19, 2012, but also that defendant Hughes and her former landlord "conspired to illegally evict the Plaintiff but were prevented from doing so only because Marshal Hughes could not find the address." *See* Pl.'s Opp'n at 11.

Plaintiff's references to the two unsuccessful eviction attempts in March 2012 are puzzling. The events giving rise to this action occurred in the course of plaintiff's actual eviction on April 20, 2012, about "7 days after the landlord received a new eviction order of possession on April 13, 2012." *See* Am. Compl. ¶¶ 2, 9. Whether there existed a conspiracy to evict plaintiff in March 2012, and whether an "attempt to evict the Plaintiff [at that time] would have been totally illegal and without authorization," Am. Compl. at 13, is irrelevant.

In any event, the allegations in the Amended Complaint fail to adequately allege the existence of a conspiracy. "A civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by

10

unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in that damage." *Graves v. United States*, 961 F. Supp. 314, 320 (D.D.C. 1997) (internal quotation marks and citations omitted). "[A]n essential element of a conspiracy claim" is an allegation that the parties to the conspiracy come to "an agreement or meeting of the minds." *Id.* (internal quotation marks and citations omitted). Conclusory allegations of an agreement do not suffice. *See Bush v. Butler*, 521 F. Supp. 2d 63, 68-69 (D.D.C. 2007) (finding that, where "plaintiff merely concludes that there was an agreement among the defendants to deprive him of access to the courts," he "has failed to plead sufficient facts from which the Court could infer the existence of a conspiracy between the defendants"). The Court concludes that plaintiff's paltry allegations of conspiracy are conclusory at best, and purport to involve a co-conspirator – plaintiff's former landlord – who is no longer a party to this action. *See Lyles v. Hughes*, 964 F. Supp. 2d 4, 9 (D.D.C. 2013). Defendants' motion to dismiss plaintiff's conspiracy claim will therefore be GRANTED.

## III. Plaintiff's Constitutional Claims[1]

### A. Claims Against the USMS

Plaintiff purports to bring this action under 42 U.S.C. § 1983. *See* Am. Compl. at 2. Section 1983 provides in pertinent part:

> [e]very person who, *under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia*, subjects . . . any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983 (emphasis added). In order to state a claim under § 1983 for a violation of a constitutional right, a complaint must allege facts sufficient to support a reasonable inference that "(1) a person (2) acting under color of state law (3) subjected the plaintiff or caused the plaintiff to be subjected (4) to the deprivation of a right secured by the Constitution or laws of the United States." *City of Okla. City v. Tuttle*, 471 U.S. 808, 829 (1985). By its terms, however, § 1983 does not apply to any federal government entity or to federal officials acting under federal law. *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1104 (D.C. Cir. 2005); *see Brown v. Short*, 729 F. Supp. 2d 125, 132 (D.D.C.

---

[1]   Plaintiff's claims under the Eighth and Fourteenth Amendments to the United States Constitution, *see* Am. Compl. at 2, 8; Pl.'s Opp'n at 2, 16-17, must be dismissed. The Eighth Amendment's protection against cruel and unusual punishment does not apply to individuals "who have not been adjudicated guilty of any crime and are therefore not subject to punishment." *Powers-Bunce v. District of Columbia*, 479 F. Supp. 2d 146, 152 (D.D.C. 2007) (internal quotation marks and citation omitted). The Fourteenth Amendment does not apply to the federal government. *See San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 542 n.21 (1987) (recognizing that "[t]he Fourteenth Amendment applies to actions by a State," and where "[t]he claimed association . . . is between the USOC and the Federal Government. . . . the Fourteenth Amendment does not apply").

2010) (concluding that U.S. Marshals Service Detention Security Officer who followed U.S. Marshal policy by conducting a partial strip search before placing plaintiff in a holding cell "was a federal actor analogous to the U.S. Marshal[] for the Superior Court[] to whom Section 1983 does not apply").

Plaintiff fares no better if this action were to proceed against the USMS under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), which is "the federal analog to suits brought against state officials under [§] 1983," *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006) (citations omitted); *see Carlson v. Green*, 446 U.S. 14, 18 (1980) ("*Bivens* established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right."). Importantly, a *Bivens* action will only lie against *federal officials*. There is no *Bivens* action as against the *federal government directly* or a *federal government agency*. *See Meyer*, 510 U.S. at 486 ("An extension of *Bivens* to agencies of the Federal Government is not supported by the logic of *Bivens* itself."). Plaintiff's constitutional claims against the USMS must therefore be DISMISSED.

### B. Claims Against Hughes and Alford

Plaintiff's *Bivens* claims against Marshals Hughes and Alford fare no better. As stated previously, *Bivens* affords a plaintiff "an implied private action for damages against federal officers alleged to have violated [her] constitutional rights." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001). Because "[s]overeign immunity . . . bar[s] suits for money damages against officials in their *official* capacity absent a specific

waiver by the government," *Clark v. Library of Congress*, 750 F.2d 89, 103 (D.C. Cir. 1984) (emphasis in original), plaintiff's constitutional claims against Hughes and Alford in their official capacities necessarily fail. Her claims against Hughes and Alford in their individual capacities also fail because the Amended Complaint does not adequately allege a constitutional claim against them.

"A Rule 12(b)(6) motion tests the legal sufficiency of a complaint[.]" *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). Plaintiff's Amended Complaint can survive defendants' motion only if it "contain[s] sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face," that is, when it "pleads factual content that allows the court to draw the reasonable inference that the defendant[s are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). "Critical to a *Bivens* claim is an allegation 'that the defendant federal official[s were] personally involved in the illegal conduct.'" *Harris v. Holder*, 885 F. Supp. 2d 390, 397 (D.D.C. 2012) (quoting *Simpkins v. District of Columbia Gov't*, 108 F.3d 366, 369 (D.C. Cir. 1997)). Indeed, "[b]ecause vicarious liability is inapplicable to *Bivens* . . . suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution. " *Iqbal*, 556 U.S. at 676.

Plaintiff here alleges numerous constitutional violations but fails to identify which government official committed each alleged violation. Thus, as drafted, it is impossible to determine which defendant is responsible for having committed the purported misconduct. Nor can the Court determine whether plaintiff purports to hold *the* Superior Court Marshal liable for the alleged unconstitutional acts of his subordinate. This

shortcoming is fatal to plaintiff's suit. If, for example, defendant Alford is alleged to have committed a constitutional violation, then defendant Hughes, Alford's superior, cannot be held liable for that violation under a theory of vicarious liability. *See Iqbal*, 556 U.S. at 676 (noting respondent's concession "that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*"). Plaintiff contends that "it was impossible for [her] to state specifically which Marshal committed which action because they both thwarted any attempt to identify themselves to prevent [her] from reporting them or bringing a civil action against them." Pl.'s Resp. to Def.'s Second Mot. to Dismiss, at 2 [Dkt. #19]; *see* Pl.'s Opp'n at 9 (averring that the Marshals "refused to permit the Plaintiff to obtain their badge numbers while they embarked on vicious eviction"). No such allegation appears in her Amended Complaint, however. Without sufficient factual allegations to support her claims, plaintiff simply fails to state viable *Bivens* claims against Hughes and Alford.[2]

---

[2] Defendants argue that they are entitled to qualified immunity with respect to plaintiff's claims. *See* Defs.' Mem. at 9. Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Ashcroft v. Al-Kidd*, 131 S. Ct. 2074, 2080 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Even if the Court were to conclude that plaintiff adequately alleges the violation of rights protected under the Fourth and Fifth Amendments, the dearth of factual allegations set forth in plaintiff's Amended Complaint and the sparse record in this case make it impossible to determine whether Hughes and Alford would be protected by qualified immunity.

## CONCLUSION

The Court concludes that plaintiff's Amended Complaint fails to state claims upon which relief can be granted and, therefore, defendants' motion to dismiss will be GRANTED. An Order accompanies this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge